**In the United States District Court
for the District of Kansas**

———————

Case No. 2:23-cv-02202-TC-TJJ

———————

HAPPYFEET-LEGENDS INTERNATIONAL, INC.,

*Plaintiff*

v.

MATTHEW HOLDAWAY ET AL.,

*Defendants*

———————

**MEMORANDUM AND ORDER**

HappyFeet-Legends International, Inc. sued defendants Matthew Holdaway, Connect Athletics, LLC, and UpStart Athletics, LLC, for, among other things, violations of the Lanham Act. Doc. 12 at ¶¶ 35–40.[1] UpStart moved to dismiss for lack of personal jurisdiction. Doc. 15. For the following reasons, UpStart's motion is denied.

**I**

**A**

A defendant may move to dismiss for, among other things, "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). In response, the plaintiff bears the burden to establish that it exists. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020). In "the preliminary stages of litigation, . . . [that] burden is light." *XMission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300, 1314 (10th Cir. 2024) (internal quotation marks omitted). To do so, a plaintiff need only make a prima facie showing of jurisdiction to defeat a motion to dismiss if an evidentiary hearing has not been held. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,

---

[1] All references to the parties' briefs are to the page numbers assigned by CM/ECF.

1

514 F.3d 1063, 1070 (10th Cir. 2008). The allegations in a complaint are accepted as true if they are plausible, non-conclusory, and not controverted by affidavits. *See Shrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011).

A defendant may, however, challenge the factual basis of the complaint insofar as it relates to personal jurisdiction. Where a defendant has done so, the plaintiff has a duty to come forward with competent proof—such as affidavits or declarations—in support of the jurisdictional allegations of the complaint. *Dental Dynamics LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1228 (10th Cir. 2020). This means that a plaintiff may defeat a motion to dismiss by presenting evidence (either uncontested allegations in its complaint or other materials, or an affidavit or declaration) that if true would support jurisdiction over the defendant. *XMission*, 955 F.3d at 839. All factual disputes are then resolved in favor of the plaintiff. *Dudnikov*, 514 F.3d at 1070.

**B**

The plaintiff, HappyFeet, is a Kansas corporation with its principal place of business in Merriam, Kansas. Doc. 12. at ¶ 1. It is a franchisor of a comprehensive method and system for the development of youth soccer training in the United States that starts training children as young as two-years old. *Id.* at ¶ 11. It owns various proprietary marks, *id.* at ¶ 12, including jerseys bearing the HappyFeet "legends" logos designed and used exclusively by HappyFeet and its franchisees. *Id.* at ¶ 19; *see also* Doc. 21-2 at ¶ 6.

According to HappyFeet, Defendants Matthew Holdaway and Connect Athletics, LLC, recognizing the value of its system and proprietary marks, entered into franchise agreements with it to develop youth soccer training and facilities in Northwest Arkansas, Southwest Missouri, and a territory based in Nashville, Tennessee. Doc. 12 at ¶ 13. For some unspecified amount of time, Holdaway and Connect trained their coaches in HappyFeet's system and made available to their coaches the training materials so they could use the system to train young soccer players. *Id.* at ¶ 15.

This lawsuit, at its core, is essentially a claim that Holdaway and Connect violated various provisions of the franchise agreement and diverted opportunities and income based on unfair competition. In particular and allegedly in violation of the franchise agreements, Holdaway created UpStart Athletics, LLC. Doc. 12 at ¶ 25. HappyFeet

alleges the defendants are impermissibly providing soccer coaching in competition with HappyFeet, impermissibly using coaches previously trained in the HappyFeet system, and impermissibly using HappyFeet's advertising materials, trademarks, and e-mail addresses in violation of the franchise agreements and the Lanham Act. *Id.* at 25.

According to HappyFeet, defendant UpStart Athletics LLC is the tool Holdaway and Connect used to engage in this unfair competition. In particular, HappyFeet alleges that Holdaway created UpStart using funds generated by Connect while it was a franchisee to provide soccer coaching in competition with HappyFeet while using coaches, marks, and the like to direct parents and players away from HappyFeet and to UpStart. Doc. 12 at ¶¶ 24–34. But the Amended Complaint contains very few jurisdictional facts about UpStart other than to state that it is an Arkansas LLC that is owned by Holdaway, and that its principal place of business is in Rogers, Arkansas. *Id.* at ¶ 4.

After HappyFeet filed suit, UpStart moved to dismiss HappyFeet's claim, arguing that neither general nor specific personal jurisdiction exists. Doc. 16 at 4–10. UpStart relied on a Declaration of Josh Ganson, who purports to be the "Director" of Upstart. Doc. 16-1 at ¶¶ 1–2. Ganson recounts that UpStart is an Arkansas limited liability company, has no connection to Kansas, financial, contractual, or otherwise, and is focused only in the regions of Nashville, Tennessee, Springfield, Missouri, and Bentonville, Arkansas. *Id.* at ¶¶ 7–22.

HappyFeet filed a response, Doc. 21, which cited no legal authority. Instead, it recounted social media posts from UpStart concerning its teams competing in soccer tournaments in Kansas, attached two exhibits, and requested leave to amend its complaint, if necessary. *See id.* One exhibit, Doc. 21-1, is an unsigned statement captioned "Exhibit A: Declaration of Pat Ozburn" that purports to "explain[] the youth soccer industry." Doc. 21 at 1. The other, Doc. 21-2, is another unsigned statement captioned "Exhibit B: Declaration of Poli Hanna" that includes 12 sub-exhibits, Docs. 21-3–21-15. Exhibit B purports to "confirm the Northwest Arkansas Club's regular participation in Kansas soccer tournaments." Doc. 21 at 3. In sum, these exhibits contend, in relevant part, that UpStart's soccer teams specifically traveled to and participated in numerous competitive soccer tournaments in Kansas while wearing HappyFeet's allegedly protected trade dress in violation of the Lanham Act. *See* Doc. 21 at 1-4; Doc. 21-1 at ¶ 8; Doc. 21-2 at ¶¶ 5–8.

## II

UpStart asserts that a Kansas federal court lacks constitutional authority to exercise personal jurisdiction over it. Doc. 16. But HappyFeet has adequately alleged facts in the Amended Complaint suggesting specific jurisdiction exists over UpStart in this dispute. As a result, Upstart's motion is denied.

### A

Before addressing the parties' arguments, it is helpful to briefly describe a few substantive statements applicable to the personal jurisdiction inquiry. At its core, personal jurisdiction concerns the power of a court to consider a dispute involving the parties. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980); *accord Walden v. Fiore*, 571 U.S. 277, 283 (2014). Generally speaking, this means that a federal court sitting in Kansas may not exercise personal jurisdiction over a non-resident defendant unless the exercise of statutory jurisdiction comports with constitutional due process. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020); *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998) (recognizing the Kansas long-arm statute is construed liberally so as to allow to the full extent permitted by due process).

Constitutional due process requires that the non-resident defendant have "minimum contacts" with the forum state, such that having to defend a lawsuit there would not offend "traditional notions of fair play and substantial justice." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *accord Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1229 (10th Cir. 2020). In other words, "the contacts with the forum State must be such that the defendant 'should reasonably anticipate being haled into court there.'" *XMission*, 955 F.3d at 839 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297).

To satisfy the minimum contacts standard, a plaintiff can establish that either general or specific personal jurisdiction exists. *See AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1058 (10th Cir. 2008); *XMission*, 955 F.3d at 839–40. "[A] person is subject to general jurisdiction within a State if its contacts with the State are so 'continuous and systematic' that the person is essentially at home in the State." *XMission*, 955 F.3d at 840 (quoting *Old Republic Ins. Co. v. Cont'l Motors,*

*Inc.*, 877 F.3d 895, 904 (10th Cir. 2017)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *accord Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). If "[g]eneral personal jurisdiction [exists, that] means that a court may exercise jurisdiction over an out-of-state party for all purposes." *Old Republic*, 877 F.3d at 903–04.

Specific jurisdiction is proper if the out-of-state defendant "purposefully directed" its activities at residents of the forum state, and the plaintiff's alleged injuries arise out of or relate to those activities. *XMission*, 955 F.3d at 840 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). The specific jurisdiction inquiry focuses on the relationship among the defendant, the forum, and the subject of the litigation; it attempts to discern whether the defendant purposefully directed its conduct towards the forum state. *See XMission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300, 1308–09 (10th Cir. 2024). If specific personal jurisdiction exists, courts may exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state. *See Old Republic*, 877 F.3d at 904.

Finally, even if the plaintiff satisfies their burden to establish personal jurisdiction, it "must then [be] assess[ed] whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice." *Dental Dynamics, LLC*, 946 F.3d at 1229. "But at that point, 'it is incumbent on [a] defendant[] to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable . . . .'" *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011) (citation omitted). Those considerations include the burden on the defendant, the forum State's interest in resolving the dispute, the plaintiff's interest in receiving convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental social policies. *XMission*, 955 F.3d at 840.

**B**

UpStart asserts dismissal is appropriate because there is neither general, specific, nor transient jurisdiction. Doc. 16. Only specific jurisdiction will be considered because it is likely that there are no

5

allegations that would support general jurisdiction,[2] and there appears to be no need to delve into the unsettled issue of transient jurisdiction.[3]

**1.** The first step in the specific jurisdiction inquiry is purposeful direction. Purposeful direction requires that a defendant deliberately engaged in significant activities within the forum state or deliberately directed its activities at the forum state so that it can be fairly said that the defendant availed itself of the privilege of conducting business in that state. *See generally Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). This exists when, for example, a defendant has reached out beyond their state and into another by, for example, entering into a contractual relationship or attempted to deliberately

---

[2] UpStart asserts that general personal jurisdiction does not exist. Doc. 16 at 5–6. HappyFeet does not meaningfully respond. It appears this silence is because the allegations in the Amended Complaint—that UpStart is an Arkansas LLC with its principal place of business in Rogers, Arkansas, Doc. 12 at ¶ 4—are sufficient to conclude that general personal jurisdiction does not exist. *See XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020); *see also Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014) (holding that only in the "exceptional case" would operations in a forum other than the place of incorporation or principal place of business be so substantial as to render general personal jurisdiction proper over an out-of-state defendant). But even if that allegation was insufficient, UpStart has made further contentions confirming general jurisdiction in Kansas is lacking. Doc. 16 at 5. These include that UpStart "does not solicit business in Kansas," "has no Kansas offices or agents," "does not send agents to Kansas nor does it hold itself out as doing business in Kansas," and "never entered a contract with a resident of Kansas." *Id. See Doering v. Copper Mountain, Inc.*, 259 F.3d 1202, 1210 (10th Cir. 2001) (explaining that a federal court can consider these factors in determining whether general personal jurisdiction exists).

[3] HappyFeet contends that it served UpStart's managing member and registered agent, Holdaway, with summons pursuant to Kan. Stat. Ann. § 60-304(e)(1) in Lenexa, Kansas. Doc. 28. The parties dispute whether this is adequate for transient or "tag" jurisdiction when concerning a business entity. *Compare* Doc. 28 (arguing it provides personal jurisdiction over an entity), *with* Doc. 29 at 4–6 (arguing it does not). While tag jurisdiction has been recognized when dealing with natural persons, it is not clear that it does or should be extended to business entities. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 382 n.4 (2021) (Gorsuch, J., concurring) (recognizing the issue); *see also U.S. Sec. and Exch. Comm'n v. Terraform Labs PTE LTD.*, 143 S. Ct. 1020 (2023) (denying petition for writ of certiorari that identified a circuit split concerning the application of tag jurisdiction to business entities).

exploit a market in the forum state. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014). In the context of tort claims, such as the Lanham Act claims HappyFeet is asserting, purposeful direction is said to arise where there has been an intentional action that was expressly aimed at the forum state with knowledge that the brunt of the injury would be felt in the forum state. *See Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008) (recounting *Calder v. Jones*, 465 U.S. 783, 789–90 (1984)); *see also Glovebox Tech. Inc. v. Da Cruz*, No. 23-01222, 2024 WL 1051950, at *5–8 (D. Colo. Mar. 11, 2024); *Kesters Merch. Display Int'l, Inc. v. Surfacequest, Inc.*, No. 21-2300, 2022 WL 1489658, at *5–6 (D. Kan. May 11, 2022); *Floyd's 99 Holdings, LLC v. Jude's Barbershop, Inc.*, 898 F. Supp. 2d 1202, 1208–09 (D. Colo. 2012).

The Amended Complaint asserts that Upstart committed an intentional tortious act. In particular, it alleges that Holdaway, who was under contract with HappyFeet, created UpStart for the purpose of unlawfully using HappyFeet's marks, information, and other licensed property through UpStart to compete against HappyFeet's franchisee, Connect, in violation of the Lanham Act. Doc. 12 at ¶ 25; *see also id.* at ¶¶ 26–34. These allegations satisfy the first *Calder* element. *See generally Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 908 (10th Cir. 2017) (explaining that a claim for "trademark infringement . . . [is] generally considered [an] *intentional* tort[ ]").

The Amended Complaint also alleges that UpStart, by and through Holdaway, expressly aimed its actions at Kansas. It alleges that Holdaway, acting on behalf of UpStart, improperly used the assets he and Connect had taken from HappyFeet in violation of their franchise agreement—marks, website, logos, and email, for example—to redirect business from the HappyFeet licensee, Connect, to an entity that Holdaway solely controlled, UpStart. Doc. 12 at ¶¶ 25–34. Harm to HappyFeet, an entity operating in Kansas, was the intended and natural consequence of their trademark violations. There is little daylight, if any, between this activity directed at HappyFeet's interest in Kansas and the interests of the California plaintiff that the Supreme Court in *Calder* found sufficient. *Calder*, 465 U.S. at 789 (holding a California court appropriately exercised personal jurisdiction over a Florida entity because the Florida defendant knew their tortious conduct would have a devastating fiscal impact on the California plaintiff); *accord XMission, L.C. v. PureHealth Rsch.*, 105 F.4th 1300, 1308–12 (finding express aiming where tortious emails were intentionally sent to plaintiff's customers in forum state).

7

It matters not that neither UpStart itself nor its downstream customers are Kansas residents. *Contra* Doc. 16 at 7. UpStart—like Connect—provides soccer instruction and related services to residents of Missouri, Arkansas, and Tennessee. So, in a sense, UpStart focuses its business efforts in those jurisdictions and, as a result, argues that it lacks any ties to Kansas residents or the Kansas market. But the important question is not where UpStart's clientele resides. *Dudnikov*, 514 F.3d at 1075. Instead, the focus is where UpStart's tort was intended to be felt. *Newsome v. Gallacher*, 722 F.3d 1257, 1268 (10th Cir. 2013). According to the Amended Complaint, UpStart intentionally harmed HappyFeet's business that is based in Kansas. It did so by improperly obtaining and then using HappyFeet's commercial assets in the Missouri, Tennessee, and Arkansas markets where HappyFeet had a franchisee serving that area. That is sufficient for purposes of the express aiming element. *Newsome*, 722 F.3d at 1269 (finding express aiming was satisfied because it was uncontroverted that the defendants knew the plaintiff operated in Oklahoma); *Dudnikov*, 514 F.3d at 1076–77 (finding express aiming where a Connecticut company sent a letter to California that it knew would harm the Colorado resident's business).

And there is some reason to believe that UpStart's tortious actions in the downstream consumer market may have also spread into Kansas. In particular, HappyFeet argues that UpStart has frequently brought its youth soccer teams from its markets outside of Kansas to Kansas for the purpose of competing in tournaments while wearing HappyFeet's protected trade dress and then utilizing photographs of the same on UpStart's electronic advertising platforms. Doc. 21 at 1. If true,[4] this would reinforce the notion that UpStart deliberately engaged in commercial activities aimed at HappyFeet's Kansas operations. *See XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020).

---

[4] HappyFeet's position is based, in part, on two exhibits attached to its response that purport to be declarations pursuant to 28 U.S.C. § 1746. Doc. 21 (citing Doc. 21-1 and 21-2). UpStart objects to the consideration of these exhibits or their contents because they are unsigned, not based on personal information, and do not support personal jurisdiction. Doc. 29 at 2–3 (citing authority suggesting that unsigned declarations have no evidentiary value). It is not necessary at this stage to engage with these arguments because the allegations in the Amended Complaint adequately establish that specific jurisdiction is appropriate.

Finally, there is no serious dispute concerning whether UpStart knew its actions would cause harm to HappyFeet in Kansas. Indeed, the Tenth Circuit has recognized, a finding of intentional action expressly aimed at the forum state is sufficient without more to establish the defendant knew the effects would be felt in the forum state. *XMission*, 105 F.4th at 1312. And that presumption is buttressed by the Amended Complaint, which adequately alleges that UpStart, by and through Holdaway, knew or should have known that its conduct would harm HappyFeet's operations which are based in Kansas.

**2.** The second step in the specific jurisdiction inquiry is to determine whether plaintiff's alleged injuries arise out of or relate to the defendant's purposefully directed activities. *XMission*, 955 F.3d at 840 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). It requires courts to evaluate and confirm whether there is an adequate link between the forum state and the claims at issue, irrespective of defendant's other activities connected to the forum state. *Id.*

The Amended Complaint establishes the link between HappyFeet's claims against UpStart and Kansas. As noted, HappyFeet is a Kansas entity, Holdaway entered into a franchisee agreement with HappyFeet, and he has violated that contract by putting to use the assets he obtained from HappyFeet (and in violation of his agreement with it) to benefit the entity that he created, UpStart. UpStart does not argue to the contrary.

### C

Even if the minimum contacts test has been met, a court must still consider whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice. *See Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1229 (10th Cir. 2020). UpStart makes no argument that some other considerations would render jurisdiction unreasonable. That constitutes a waiver of the issue at this stage of the proceedings. *See, e.g.*, *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011) (declining to consider whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice where "defendants have made no effort in that regard . . . ."); *see also XMission*, 105 F.4th at 1314.

## D

There is, at this stage of the proceedings, sufficient information to justify the exercise of personal jurisdiction over UpStart in this dispute. UpStart offers no persuasive arguments to the contrary. In particular, it fails to identify the aforementioned analytical framework or make any argument that is germane to its inquiries. Instead, it offers unrelated arguments that fail to justify the dismissal it seeks.

For example, UpStart argues that HappyFeet "has failed to allege any cognizable tort against . . . UpStart, which therefore precludes a finding of any damage to Plaintiffs within Kansas." Doc. 16 at 7. But it has. The Tenth Circuit has held that a claim for "trademark infringement . . . [is] generally considered [an] *intentional* tort[]." *Old Republic*, 877 F.3d at 908. And that is what the Amended Complaint alleges. Doc. 12 at ¶¶ 35–48 (asserting two Lanham Act claims).

UpStart also relies on a strawman. Specifically, it attempts to characterize HappyFeet's claims as only limited to the fact that UpStart has a website which may be accessible to Kansas and then points to Tenth Circuit cases recognizing that operation of a website available in the forum state is insufficient to justify personal jurisdiction of a non-resident defendant. Doc. 16 at 8–10. But that is not the basis of HappyFeet's claims against UpStart. The basis of HappyFeet's claims is that UpStart is unlawfully using HappyFeet's trade dress and trademarks without authorization to harm its business interests. In other words, UpStart's arguments fail to address the factual assertions contained in the Amended Complaint and provide no basis to find specific jurisdiction is lacking.

## III

For the foregoing reasons, UpStart's Motion to Dismiss for lack of personal jurisdiction, Doc. 15, is DENIED.

It is so ordered.

Date: December 6, 2024                      s/ Toby Crouse
                                                                  Toby Crouse
                                                                  United States District Judge