**In the United States District Court
for the District of Kansas**

———————

Case No. 23-cv-02202-TC

———————

HAPPYFEET-LEGENDS INTERNATIONAL, INC.,

*Plaintiff*

v.

MATTHEW HOLDAWAY ET AL.,

*Defendants*

———————

**MEMORANDUM AND ORDER**

    HappyFeet-Legends International, Inc. sued Matthew Holdaway, Connect Athletics, LLC, and UPStart Athletics, LLC, alleging breach of contract and violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. Doc. 1. Defendants now move for partial summary judgment only on HappyFeet's breach of contract claim. Doc. 83. For the following reasons, that motion is granted.

**I**

**A**

    Summary judgment is proper under the Federal Rules of Civil Procedure when the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it is necessary to resolve a claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). And disputes over material facts are "genuine" if the competing evidence would permit a reasonable jury to decide the issue in either party's favor. *Id.* Disputes—even hotly contested ones—over facts that are not essential to the claims are irrelevant. *Brown v. Perez*, 835 F.3d 1223, 1233 (10th Cir. 2016). Indeed, belaboring such disputes undermines the efficiency that Rule 56 seeks to promote. *Adler*, 144 F.3d at 670.

1

At the summary judgment stage, material facts "must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* D. Kan. R. 56.1(a)–(c). To determine whether a genuine dispute exists, the court views all evidence, and draws all reasonable inferences, in the light most favorable to the nonmoving party. *See Allen v. Muskogee, Okla.*, 119 F.3d 837, 839–40 (10th Cir. 1997). That said, the nonmoving party cannot create a genuine factual dispute by making allegations that are purely conclusory, *Adler*, 144 F.3d at 671–72, 674, or unsupported by the record. *See Scott v. Harris*, 550 U.S. 372, 378–81 (2007).

The moving party bears the initial burden of showing the absence of any genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues as to those dispositive matters remain for trial. *Celotex*, 477 U.S. at 324; *Savant Homes*, 809 F.3d at 1137.

**B**

Plaintiff HappyFeet is a Kansas corporation that franchises a method for training youth soccer players. Doc. 82 at ¶ 2.a.i.[1] Defendant Holdaway worked at HappyFeet for about a year in 2009. *Id.* at ¶ 2.a.ii. He is the sole member of Defendant Connect Athletics, LLC, an Arkansas limited liability company. *Id.* at ¶¶ 2.a.iii–iv.

In 2010, HappyFeet and Connect entered into a franchise agreement. Doc. 82 at ¶ 2.a.v; *see* Doc. 84-1. This agreement gave Connect the right to use HappyFeet's trademarks to develop youth soccer programs in northwest Arkansas. Doc. 82 at ¶ 2.a.vi. In exchange, Connect paid HappyFeet an initial franchise fee and agreed to pay monthly royalties. *Id.*

In 2023, Holdaway formed Defendant UPStart Athletics, LLC. Doc. 82 at ¶ 2.a.vii. UPStart did not enter into any contract with HappyFeet. *Id.* at 2.a.viii.

---

[1] All references to the parties' briefs are to the page numbers assigned by CM/ECF. All facts are uncontroverted unless otherwise specified.

HappyFeet sued Holdaway, Connect, and UPStart in federal court, bringing four counts. Doc. 1. In Count I, HappyFeet alleges that Defendants used its intellectual property in violation of the Lanham Act. Doc. 82 at ¶ 4.a.i. Count II alleges that Holdaway and Connect breached their franchise agreements by failing to report revenue and pay royalties as required by the parties' contracts. *Id.* at ¶ 4.a.ii. Count III seeks an order enjoining Defendants from continuing to use HappyFeet's intellectual property. *Id.* at ¶ 4.a.iii. Finally, Count IV alleges that Defendants unjustly enriched themselves by misrepresenting their ability to pay royalties. Doc. 82 at ¶ 4.a.iv.

Holdaway and Connect's summary judgment motion focuses on the breach of contract claim.[2] But the status of the parties' contracts is, at best, murky. All told, there are three potential franchise agreements, including one for Springfield, Missouri, one for Nashville, Tennessee, and one for northwest Arkansas. Uncertainties abound with regard to these contracts.

Take the Arkansas agreement first. Connect and Holdaway's principal assertion is that, despite carrying on as a franchisee for more than a decade, the breach of contract claim concerning the Arkansas agreement fails as a matter of law because it was not properly executed by the appropriate officer of HappyFeet. Doc. 84 at 7. HappyFeet's factual response is alarming: It alleges that the document on which it relies (that has the improper signature) is not actually the contract signed by the parties when the agreement was struck in 2010, but is instead an attempted recreation of that agreement that someone from HappyFeet contrived at some point after learning there was no evidence of a written franchise agreement. Doc. 87 at 13 ¶ 9. Evidently neither party has any document memorializing the parties' agreement. Moreover, HappyFeet offers unsubstantiated speculation that the original agreement was either likely signed by an appropriate person on behalf of HappyFeet or that the person currently shown as having signed the doctored agreement probably had authority to sign it at the time the agreement was recreated. *See generally* Doc. 87.

The Springfield and Nashville agreements are even more circumspect. During discovery, HappyFeet produced two documents that it now alleges are franchise agreements between it, Connect, and

---

[2] HappyFeet did not bring breach of contract claims against UPStart. Doc. 82 at ¶ 4.a.

Holdaway. Doc. 84 at ¶¶ 13, 18; Docs. 84-2 & 84-3. Connect and Holdaway contend—and HappyFeet largely concedes—that these agreements are fraudulent. *See generally* Doc. 87. Specifically, they argue that the two agreements are copies of the Arkansas agreement and that someone with HappyFeet attempted to recreate those agreements by, among other things, forging Holdaway's signature. Doc. 84 at ¶¶ 14, 15, 19, 20. In fact, Connect and Holdaway deny that they signed the Springfield and Nashville agreements. *Id.* at 13. And there appears to be no evidence or argument to the contrary.

Connect and Holdaway move for summary judgment only on HappyFeet's breach of contract claim. Doc. 83; Doc. 90 at 2, n.1. They claim an entitlement to judgment as a matter of law regarding the three franchise agreements because HappyFeet has not met (and lacks any evidence to carry) its burden of establishing that these alleged contracts are valid. Doc. 84 at 8. In other words, Defendants allege that HappyFeet cannot establish the existence of an enforceable contract as required by Kansas law.[3]

HappyFeet's summary judgment response does not aid its argument. For one thing, it attempts to create disputes of fact based on the strength of declarations that are little more than speculation and conjecture. By way of example, the declarations supporting HappyFeet's response—and, as a result, the proposed additional statements of fact—proffer a variety of explanations that rely on the declarants' uncertain recollections or unsupported speculation. Doc. 87 at 13 ¶ 9 (noting that the "original franchise agreements between Connect/Holdaway and HappyFeet were probably misplaced," and that they were "probably" signed by HappyFeet's owner). More troubling, the story portrayed by the declarants that HappyFeet offers largely

---

[3] The parties assume Kansas law applies. Doc. 82 at ¶ 1.d; *see also Digital Ally, Inc. v. Z3 Tech., LLC*, 754 F.3d 802, 812 (10th Cir. 2014) (accepting the parties' assumption as to the applicability of state law). When a federal court exercises diversity jurisdiction, it must "apply the substantive law of the forum state." *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 713 (10th Cir. 2014). That law arises from state statutes and decisions of a state's highest court. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). As a result, the Kansas Supreme Court's construction of Kansas law governs the legal analysis. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013). "[A]nd if no such rulings exist, [federal courts sitting in diversity] must endeavor to predict how the high court would rule." *Finstuen v. Crutcher*, 496 F.3d 1139, 1148 (10th Cir. 2007) (quoting *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 899 (10th Cir. 2006)).

acknowledges that none of the contracts on which HappyFeet's claims are based are the ones that were signed by the parties. Those, HappyFeet surmises, have been misplaced, and the ones it produced in discovery are instead recreations of what someone from HappyFeet thought they may have entailed and, among other things, include signatures of individuals that (likely) did not sign the original and actual agreement(s) between HappyFeet and Connect/Holdaway.

## II

Connect and Holdaway seek summary judgment on HappyFeet's breach of contract claim. Broadly speaking, they contend that HappyFeet's breach of contract claim fails because there is no evidence to suggest that the parties' relationship was defined by written, enforceable contracts. Doc. 84 at 8–13; Doc. 90 at 10–14. For the following reasons, that motion is granted.

In order to recover on a breach of contract action in Kansas, the plaintiff must produce evidence of an enforceable contract, consideration, performance by the plaintiff, a breach by the defendant, and damages resulting from that breach. *Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013). HappyFeet, who alleges a contractual franchise relationship with Connect and Holdaway, bears the burden of proving the existence of the contract. *Unified Sch. Dist. No. 446, Indep., Kan. v. Sandoval*, 286 P.3d 542, 546 (Kan. 2012). A binding contract requires an offer of terms, acceptance of those terms, and consideration. *Duling v. Mid Am. Credit Union*, 530 P.3d 737, 744 (Kan. Ct. App. 2022). Acceptance is measured by the parties' "outward expressions of assent." *Sw. & Assocs., Inc. v. Steven Enters., LLC*, 88 P.3d 1246, 1249 (Kan. Ct. App. 2004). There must be a "meeting of the minds as to all essential terms" of the contract. *Dougan v. Rossville Drainage Dist.*, 15 P.3d 338, 352 (Kan. 2000); *accord State v. Ralston*, 225 P.3d 741, 748 (Kan. Ct. App. 2010).

The summary judgment record fails to establish that HappyFeet entered into enforceable written contract(s) with Connect and Holdaway concerning the operation of franchises. HappyFeet's only evidence for the existence of a contract covering the Arkansas territory is a document that HappyFeet's evidence concedes is not the contract the parties signed. Doc. 87 at 13 ¶ 9. There is no indication as to what the terms originally were for the Arkansas territory or who (if anyone) signed the agreement for HappyFeet *Id.*; *see also* Doc. 87 at 4 ¶¶ 6–7 (outlining speculation as to who might have signed the agreement for

5

HappyFeet). Rather, HappyFeet admits that the document it produced is someone at HappyFeet's attempt to recreate what the originals may have looked like. Doc. 87 at 13 ¶ 9. And the other two documents concerning Springfield and Nashville are acknowledged to be faux representations of an unknown HappyFeet employee attempting to create the contracts. *Id.* On this record, there is no colorable evidence on which HappyFeet could establish that it has a valid, enforceable agreement (or agreements) with Connect and Holdaway. *See King v. White*, 962 P.2d 475, 482 (Kan. 1998) (finding that a forged endorsement "may not be deemed effective"); *see also Kansas City Brigade, Inc. v. DTG Operations, Inc.*, 2011 WL 1877796, at *5 (Kan. Ct. App.) (finding that a forged signature did not bind the parties); *Aspen Const. Serv., Inc. v. Shinn*, 2008 WL 360716, at *2 (Kan. Ct. App.) (affirming denial of summary judgment where there was a dispute of fact as to whether the defendant's signature on the contract was forged).

HappyFeet tries to avoid this result by hinting that the agreements are or should be construed to be implied-in-fact contracts or that the terms should or could be shown by ratification or some other theory of equity.[4] *See* Doc. 87 at ¶¶ 5, 11. That effort fails for several reasons.

*First*, HappyFeet fails to articulate a viable legal basis for recognizing the breach of a quasi-contractual or an equitably imposed duty under Kansas law. Its summary judgment argument, which is less than a page of text, is wholly devoid of any legal authority or legal argument. Doc. 87 at 14–15; *see also GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1207 (10th Cir. 2022) (noting that arguments made "in a perfunctory and underdeveloped manner" are not considered). In fact, Kansas law appears to preclude such a claim where, as here, the franchise contract cannot be performed in less than one year. *See* Kan. Stat. Ann. § 33-106 (requiring such contracts to be in writing); *cf. Ed DeWitte Ins. Agency, Inc. v. Fin. Assocs. Midwest, Inc.*, 427 P.3d 25, 29, 31 (Kan. 2018) (noting that contracts that "cannot possibly be performed within one year" fall under Section 33-106, but holding that full performance by one party removes such contracts from the statute); *see also* Docs. 84-

---

[4] HappyFeet does not actually argue that these theories would save its claim. Instead, it offers factual theories on which one may—perhaps successfully—be able to save the contract claim. Nonetheless, HappyFeet provides no argument or legal authority that such circumstances exist under Kansas law.

1, 84-2, 84-3 (setting ten-year terms for the franchise agreements and imposing duties on both parties for ten years).

*Second*, even if the claim were legally viable, it was not preserved in the pretrial order. The only claim HappyFeet preserved with regard to Count II was breach of the written contracts. Doc. 82 at ¶¶ 3.a., 4.a.ii (couching the contract claim as a breach of the express terms of the agreement and failing to include an equitable cause of action or any argument based on ratification or other theory of recovery). Failure to preserve these equitable or quasi-contractual claims in the pretrial order operates as a waiver. *Murphy-Sims v. Owners Ins. Co.*, 947 F.3d 628, 630 (10th Cir. 2020); *Eucalyptus Real Est., LLC v. Innovative Work Comp Sols., LLC*, No. 23-3119, 2024 WL 1631228, at *5 (10th Cir. Apr. 16, 2024) (affirming the district court's finding that an equitable defense that was not raised in the pretrial order was waived).

*Third*, the factual bases on which HappyFeet's argument depends are declarations that are based only on speculation and conjecture. For example, HappyFeet relies on a declaration by its owner, Andy Barney, wherein he admits not knowing who signed the agreements for either party and guesses as to who "probably" signed them. Doc. 87-1 at ¶¶ 10, 11. Barney also openly speculates about what happened to the original agreements. *Id.* at ¶ 14. This will not do on summary judgment. *See Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1201 (10th Cir. 2015) (affirming the lower court's grant of summary judgment where the plaintiff relied on affidavits that constituted hearsay, and noting that "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings; they must be based on more than mere speculation, conjecture, or surmise") (quotations and alterations omitted).

\* \* \*

It is obvious that the parties operated as if they had a franchise agreement. Doc. 82 at ¶¶ 2.a.v–2.a.vi; *see also id.* at ¶ 2.b.i (stipulating to the admissibility of the 2010 franchise agreement). But the summary judgment record fails to establish with facts and legal authority what the terms of that agreement were, whether (or on what basis) it was effective and enforceable, and whether there are other legal or equitable bases on which to enforce the terms of this relationship. Connect and Holdaway's motion for summary judgment is granted because they have established there are no genuine disputes of material fact and that they are entitled to judgment as a matter of law given that the record

7

fails to identify an enforceable agreement on which a breach of contract claim can be maintained.

### III

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment, Doc. 84, is GRANTED.

It is so ordered.

Date: August 18, 2025                    s/ Toby Crouse
                                                  Toby Crouse
                                                  United States District Judge